E-FILED
Sunday, 07 August, 2022  02:03:42 PM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### SPRINGFIELD DIVISION

| | |
|---|---|
| Missy Baker, individually and on behalf of all others similarly situated, | 3:22-cv-03148 |
| Plaintiff, | |
| - against - | Class Action Complaint |
| Walmart Inc., | |
| Defendant | Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations pertaining to Plaintiff, which are based on personal knowledge:

1.      Walmart Inc. ("Defendant") manufactures, labels, markets, and sells mustard promoted as sweetened with honey under the Great Value brand ("Product").

 

2.     The representations include "Honey Mustard," "Made With Real Honey," and pictures of fresh mustard seeds and a honey dipper in a pool of honey.

3.     The representations cause consumers to expect the Product contained honey as the exclusive, primary, or significant sweetening ingredient.

## I.     MUSTARD

4.     Mustard is a paste composed of ground mustard seed, salt, and vinegar, that may contain added sweeteners and spices.

5.     The added sweeteners can include refined sugar and honey.

6.     Honey mustard refers to a "basic mild, sweet mustard [with] a bit of a bite that's mellowed and smoothed with a dollop of sweet honey."

7.     Mustard and honey are typically blended in equal amounts to make honey mustard.

8.     Dictionaries, chefs, and commercial formulators define honey mustard as mustard blended with honey.

9.     While honey mustard may contain some sugar, it is primarily sweetened with honey.

## II.     AVOIDANCE OF SUGAR

10.     According to the National Institutes of Health ("NIH"), there is a direct link between excess sugar consumption and obesity.[1]

11.     Doctors and nutritionists agree that excess sugar intake leads to weight gain, Type 2 diabetes, dental caries, heart disease, cancer, and even dementia.[2]

12.     One food industry insider stated that "[consumer] demand for sugar reduction [cuts] across food and beverage categories," from sodas to condiments.

---

[1] NIH, Sweet Stuff: How Sugars and Sweeteners Affect Your Health, October 2014.
[2] Marlene Cimons, Eating too much sugar can hurt your health, and for some it's actually addictive, Washington Post December 16, 2017.

13.     Speakers at the International Sweetener conference affirmed that "sugar avoidance was a macro trend 'that is here to stay and will only increase.'"

14.     Surveys by Information Resources, Inc. ("IRI") show that 58% of consumers avoid sugar, and over 80% do so for reasons related to health and weight issues.[3]

## III.   SUBSTITUTION OF SUGAR WITH HONEY

15.     In place of sugar, consumers are substituting foods sweetened with honey.

16.     This is confirmed by USDA data, showing that the volume of honey has almost doubled in the past 35 years, from 339 million to 603 million pounds.[4]

17.     For the first time in history in 2020, honey surpassed white sugar as America's number one choice for a sweetener.

18.     At least 50% of consumers are willing to pay more for foods primarily sweetened with honey.

19.     Roughly 60% of consumers look for references to honey on a front label when deciding what to buy.

20.     There are several reasons why consumers seek foods sweetened primarily with honey.

21.     First, almost three-quarters of consumers rate honey as "better-for-you" than sugar.

22.     Second, 93% of consumers recognize that honey is a natural sweetener, because unlike sugar, it is not heavily refined through harsh unnatural processes.

23.     According to the director of the National Honey Board, "Honey fits perfectly with consumers' desire to know where their food comes from and their preference for foods that are

---

[3] Kieron Rooney, Yes, too much sugar is bad for our health – here's what the science says, The Conversation, March 8, 2018.
[4] USDA/ERS.

unprocessed," because it "is made by bees from the nectar of flowers."

24.    Third, honey has a lower glycemic index than sugar, causing slower fluctuations in blood sugar and insulin levels.

25.    Refined sugars lead to rapid spikes of blood sugar, with quick spurts of energy followed by sharp declines, characterized by tiredness, headaches, and difficulties in concentrating.

26.    Fourth, honey is sweeter than sugar, so less of it is needed to achieve the same level of sweetness.

27.    Fifth, unlike sugar, honey has small but significant amounts of nutrients such as vitamins, minerals, enzymes, phytonutrients and antioxidants.[5]

28.    These benefits promote immunity and aid digestion.

## IV.    MISREPRESENTATIONS ABOUT HONEY CONTENT

29.    By describing the Product as honey mustard that is "Made with Real Honey" with a pictures of a dripping honey dipper and mustard seeds, consumers will expect honey is its primary or at least a significant sweetening ingredient.

30.    However, sugar is the primary sweetener, listed fourth in the ingredients, followed by salt, then honey, sixth.

**INGREDIENTS:** VINEGAR, WATER, MUSTARD SEED, SUGAR, SALT, HONEY, SPICES, GARLIC POWDER, CARROT EXTRACT (COLOR), PAPRIKA.

31.    The Nutrition Facts discloses 1 g (or 1000 milligrams) of added sugar and 25 mg of added sodium.

---

[5] Brian Kennell, Healthy Food Trends Drive New Products, HuffingtonPost.com, October 1, 2015, updated December 6, 2017.

4

32.     Mustard seeds have a negligible, almost non-detectible amount of sodium, which means the salt content is provided almost exclusively by the added salt ingredient.

33.     One gram of salt contains 388 mg of sodium.

34.     For the Product to contain 25 mg of added sodium from only added salt, it would contain roughly 64 mg of salt.

35.     This means the amount of honey by weight is less than 64 mg.

36.     The amount of sugar can be estimated at almost 16 times more than the amount of honey.

37.     Honey is not a significant sweetening ingredient in the Product based on these calculations.

38.     Consumers expect a product identified as honey mustard claiming to be "Made With Real Honey" with pictures of a honey dipper and mustard seeds to be sweetened mainly with honey or at a minimum, contain honey as a significant sweetening ingredient.

39.     Such mustards are available to consumers and are not technologically or commercially unfeasible, such as honey mustard made by True Made Foods, which lists honey as its primary sweetening ingredient.



INGREDIENTS Organic Vinegar, Water, Honey, Apple Puree Concentrate, Mustard Seed, Carrot, Butternut Squash, Sea Salt, Turmeric, Paprika, Spices.

**INGREDIENTS** Organic Vinegar, Water, Honey, Apple Puree Concentrate, Mustard Seed, Carrot, Butternut Squash, Sea Salt, Turmeric, Paprika, Spices.

40.     Defendant makes other representations and omissions which are false and misleading.

41.     The value of the Product that Plaintiff purchased was materially less than its value

as represented by Defendant.

42.    Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

43.    Plaintiff paid more for the Product based on the representations, and had she known the truth, she would not have bought it or would have paid less.

44.    As a result of the false and misleading representations, the Product is sold at a premium price, approximately no less than $1.12 for 12 OZ (340g), excluding tax and sales, higher than similar products, represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions.

<u>Jurisdiction and Venue</u>

45.    Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

46.    The aggregate amount in controversy exceeds $5 million, including any statutory damages, exclusive of interest and costs.

47.    Plaintiff Missy Baker is a citizen of Taylorville, Christian County, Illinois.

48.    Defendant Walmart Inc. is a Delaware corporation with a principal place of business in Bentonville, Benton County, Arkansas.

49.    The class of persons Plaintiff seeks to represent includes persons who are citizens of different states from which Defendant is a citizen.

50.    The members of the class Plaintiff seeks to represent are more than 100, because the Product has been sold for several years, with the representations described here, in thousands of locations in the states covered by Plaintiff's proposed classes.

51.    Defendant transacts business within this District through sale of the Product at its

6

over 150 stores within this State, and dozens within this District, and online, sold directly to residents of this District.

52.     Venue is in this District because Plaintiff resides in this District and the actions giving rise to the claims occurred within this District.

53.     This action is properly assigned to the Springfield Division of this District because a substantial part of the events or omissions giving rise to these claims occurred in Christian County, including Plaintiff's purchase, consumption, and/or use of the Product and awareness and/or experiences of and with the issues described here.

<u>Parties</u>

54.     Plaintiff Missy Baker is a citizen of Taylorville, Illinois, Christian County.

55.     Defendant Walmart Inc. is a Delaware corporation with a principal place of business in Bentonville, Arkansas, Benton County.

56.     Walmart is an American multinational retail corporation that operates a chain of over 5,000 supercenters throughout the nation, selling everything from furniture to groceries.

57.     While Walmart sells leading national brands, it also sells a large number of products under one of its private label brands, Great Value.

58.     Private label products are made by third-party manufacturers and sold under the name of the retailer, or its sub-brands.

59.     Previously referred to as "generic" or "store brand," private label products have increased in quality, and often are superior to their national brand counterparts.

60.     Products under the Great Value brand have an industry-wide reputation for quality.

61.     In releasing products under the Great Value brand, Defendant's foremost criteria was to have high-quality products that were equal to or better than the national brands.

62.     Defendant is able to get national brands to produce its private label items due its loyal customer base and tough negotiating.

63.     That Great Value branded products met this high bar was proven by focus groups, which rated them above the name brand equivalent.

64.     Private label products generate higher profits for retailers because national brands spend significantly more on marketing, contributing to their higher prices.

65.     A survey by The Nielsen Co. "found nearly three out of four American consumers believe store brands are good alternatives to national brands, and more than 60 percent consider them to be just as good."

66.     Private label products under the Great Value brand benefit by their association with consumers' appreciation for the Walmart brand as a whole.

67.     The development of private label items is a growth area for Walmart, as they select only top suppliers to develop and produce Great Value products.

68.     Plaintiff purchased the Product on one or more occasions within the statutes of limitations for each cause of action alleged, at Defendant's stores, at locations such as 1530 W Springfield Rd, Taylorville, IL 62568, between May and June 2022, among other times.

69.     Plaintiff bought the Product because she believed and expected that the Product contained honey as the exclusive, primary, and/or most significant sweetener because that is what the representations and omissions said and implied, on the packaging and the absence of any reference or statement elsewhere on the Product.

70.     Plaintiff seeks to purchase mustard which contains honey as the exclusive, primary, and/or most significant sweetener.

71.     Plaintiff wanted more than a honey taste, but mustard sweetened with honey as an

ingredient.

72.    Plaintiff relied on the words, terms coloring, descriptions, layout, placement, packaging, tags, and/or images on the Product, on the labeling, statements, omissions, claims, and instructions, made by Defendant or at its directions, in digital, print and/or social media, which accompanied the Product and separately, through in-store, digital, audio, and print marketing.

73.    Plaintiff is part of the over 50% of consumers who seek to consume more whole grains and less sugar for reasons including attention to their health, nutrition and wellness.

74.    Plaintiff is part of the over 50% of consumers who is willing to pay, and does pay, more for foods containing a predominant amount of whole grain ingredients and that are primarily or exclusively sweetened with honey or contain honey as a significant sweetening ingredient.

75.    Plaintiff bought the Product at or exceeding the above-referenced price.

76.    Plaintiff relied on the front label representations identified here.

77.    Plaintiff would not have purchased the Product if she knew the representations were false and misleading.

78.    Plaintiff chose between Defendant's Product and other similar products which were represented similarly, but which did not misrepresent their attributes and/or lower-priced products which did not make the statements and claims made by Defendant.

79.    The Product was worth less than what Plaintiff paid and she would not have paid as much absent Defendant's false and misleading statements and omissions.

80.    Plaintiff bought the Product at or exceeding the above-referenced price.

81.    Plaintiff would not have purchased the Product if she knew the representations and omissions were false and misleading or would have paid less for it.

82.    Plaintiff chose between Defendant's Product and products represented similarly, but

which did not misrepresent their attributes, requirements, features, and/or components.

83.     The Product was worth less than what Plaintiff paid and she would not have paid as much absent Defendant's false and misleading statements and omissions.

84.     Plaintiff intends to, seeks to, and will purchase the Product again when she can do so with the assurance the Product's representations are consistent with its attributes and/or composition.

85.     Plaintiff is unable to rely on the labeling and representations not only of this Product, but other similar honey mustard condiments, because she is unsure whether those representations are truthful.

<u>Class Allegations</u>

86.     Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **Illinois Class:** All persons in the State of Illinois who purchased the Product during the statutes of limitations for each cause of action alleged; and

> **Consumer Fraud Multi-State Class**: All persons in the States of North Dakota, West Virginia, Virginia, North Carolina, Kentucky, New Mexico, Oklahoma, Utah, Nebraska, South Carolina, Kansas, and Wyoming who purchased the Product during the statutes of limitations for each cause of action alleged.

87.     Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

88.     Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

89.     Plaintiff is an adequate representative because her interests do not conflict with other members.

90. No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

91. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

92. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

93. Plaintiff seeks class-wide injunctive relief because the practices continue.

Illinois Consumer Fraud and Deceptive Business Practices Act
("ICFA"), 815 ILCS 505/1, *et seq.*

(Consumer Protection Statute)

94. Plaintiff incorporates by reference all preceding paragraphs.

95. Plaintiff believed the Product contained honey as the exclusive, primary, or significant sweetening ingredient.

96. Plaintiff relied on the front label representations about honey to believe the Product contained honey as the exclusive, primary, or significant sweetening ingredient.

97. Plaintiff paid more for the Product based on these representations, and she would not have purchased it or paid as much if the true facts had been known, suffering damages.

Violation of State Consumer Fraud Acts

(Consumer Fraud Multi-State Class)

98. The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the consumer protection statute invoked by Plaintiff and prohibit the use of unfair or deceptive business practices in the conduct of commerce.

99. The members of the Consumer Fraud Multi-State Class reserve their rights to assert

their consumer protection claims under the Consumer Fraud Acts of the States they represent and/or the consumer protection statute invoked by Plaintiff.

100.   Defendant intended that members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct.

101.   As a result of Defendant's use of unfair or deceptive acts, the Consumer Fraud Multi-State Class sustained damages.

Breaches of Express Warranty,<br>
Implied Warranty of Merchantability/Fitness for a Particular Purpose and<br>
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, <em>et seq</em>.

102.   The Product was manufactured, identified, distributed, marketed, and sold by Defendant and expressly and impliedly warranted to Plaintiff that it contained honey as the exclusive, primary, or significant sweetening ingredient.

103.   Defendant directly marketed the Product to Plaintiff and consumers through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, product descriptions, and targeted digital advertising.

104.   Defendant knew the product attributes that potential customers like Plaintiff were seeking and developed its marketing and labeling to directly meet those needs and desires.

105.   Defendant's representations about the Product were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant that it contained honey as the exclusive, primary, or significant sweetening ingredient.

106.   Defendant's representations affirmed and promised that the Product contained honey as the exclusive, primary, or significant sweetening ingredient.

107.   Defendant described the Product so Plaintiff and consumers believed it contained honey as the exclusive, primary, or significant sweetening ingredient, which became part of the

12

basis of the bargain that it would conform to its affirmations and promises.

108.   Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

109.   This duty is based on Defendant's outsized role in the market for this type of Product, a trusted company, known for its high-quality products, honestly marketed to consumers.

110.   Plaintiff recently became aware of Defendant's breaches of the Product's warranties.

111.   Plaintiff provides notice to Defendant, its agents, representatives, retailers, and their employees that it breached the express and implied warranties associated with the Product.

112.   Defendant received notice and should have been aware of these issues due to complaints by third-parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

113.   The Product did not conform to its affirmations of fact and promises due to Defendant's actions.

114.   The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging, container, or label, because it was marketed as if it contained honey as the exclusive, primary, or significant sweetening ingredient.

115.   The Product was not merchantable because Defendant had reason to know the particular purpose for which the Product was bought by Plaintiff, because she expected it contained honey as the exclusive, primary, or significant sweetening ingredient, and she relied on Defendant's skill and judgment to select or furnish such a suitable product.

116.   Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Negligent Misrepresentation

117. Defendant had a duty to truthfully represent the Product, which it breached.

118. This duty was non-delegable, and based on Defendant's position, holding itself out as having special knowledge and experience in this area, a trusted company known for high-quality products, honestly marketed to consumers.

119. Defendant's representations and omissions regarding the Product went beyond the specific representations on the packaging, as they incorporated the extra-labeling promises and commitments to quality, transparency and putting customers first, that it has been known for.

120. These promises were outside of the standard representations that other companies may make in a standard arms-length, retail context.

121. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in Defendant.

122. Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchase of the Product.

123. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Fraud

124. Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it contained honey as the exclusive, primary, or significant sweetening ingredient.

125. Defendant possesses specialized knowledge regarding the importance of the source of a food's sweetener to consumers based on internal and external research and reports.

126. The records Defendant is required to maintain provided it with actual and/or

constructive knowledge of the falsity and/or inaccuracy of the representations.

127. The records Defendant is required to maintain provided it with actual and/or constructive knowledge of the falsity and/or inaccuracy of the representations.

<u>Unjust Enrichment</u>

128. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

  **WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing Defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary damages, statutory and/or punitive damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated:          August 7, 2022

                                        Respectfully submitted,

/s/Spencer Sheehan
Sheehan & Associates, P.C.
Spencer Sheehan
60 Cuttermill Rd Ste 412
Great Neck NY 11021
Tel: (516) 268-7080
spencer@spencersheehan.com